RECEIVED
2005 AUG 30 P 1:53

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| James H. Shortz, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) CIVIL ACTION NO.: 3:05CV675-T |
| | ) |
| vs. | ) JURY DEMAND |
| | ) |
| | ) |
| United Parcel Service | ) |
| Defendant, | |

## PLAINTIFF'S ANSWER TO DEFENDANT'S MOTION TO DISMISS

## PLAINTIFF'S MOTION TO AMEND COMPLAINT

Plaintiff acknowledges that defendant should be referred to as United Parcel Service, Inc. or "UPS" and requests that the Court allows plaintiff to amend his complaint to properly identify the defendant.

## 42 U.S.C. § 1983

"Title 42 U.S.C. § 1983, provides, in relevant part."

*"Every person, who under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress..."*

"In order to establish individual liability under § 1983, a plaintiff must show (a) that the defendant is a "person" acting "under the color of state law," and (b) that the defendant

1

caused the plaintiff to be deprived of a federal right. *See, e.g., Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961)" BACK v. HASTINGS ON HUDSON UNION FREE SCHOOL DIST. *Cite as* 365 F.3d 107, 122 (2nd Cir. 2004).

## 42 U.S.C. § 1983 *LITERALLY*

Every "person" [United Parcel Service, Inc.] who under color of any...custom [racially discriminatory practices popularly performed and protected by Alabama state law precedent(s)] ...of any State [Alabama]..., subjects or causes to be subjected, any citizen of the United States [James H. Shortz]...within the jurisdiction thereof [Alabama] to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws [1st, 4th, and 14th Amendments to the United States Constitution], shall be liable to the party injured [James H. Shortz] in an action at law, suit in equity, or other proper proceeding [CIVIL ACTION NO.:3:05CV675-T] for redress...

## FACTS

After having purchased shipment of merchandise on or about October 7, 2004 of a laptop computer to Nigeria, a representative of United Parcel Service, Inc., Penny Stewart, identified as UPS Security and acting in her official capacity, called Plaintiff James H Shortz over his personal telephone at (334) 467-7880 the next day, on or about October 8, 2004. Penny Stewart inquired as to the nature of Plaintiff's business and the reason for Plaintiff's shipment of the laptop to Nigeria. Plaintiff Shortz asked Stewart why was she making such an inquiry, because it seemed irregular and unusual for a shipper to question a customer about his reasons for conducting his personal business. Nonetheless, Shortz complied with reasonable answers and Stewart then cautioned Shortz

that UPS had had complaints of fraud being committed by Nigerians who have solicited Americans to make purchases and otherwise perform assorted business agreements only to be victimized by some type of scheme. Shortz assured Stewart that he was not being manipulated; that he was a veteran law enforcement officer, a licensed private investigator and that he would gladly assist UPS with its investigative needs. At some point in the conversation, Shortz and Stewart discussed United States Customs and Shortz assured Stewart that if Customs decided to investigate then Customs had the right to proceed. Shortz advised that otherwise, he expected his shipment to go as planned to Nigeria. Stewart agreed and the conversation ended.

Shortz then called the UPS customer service 1-800 number and complained about the audacity of the unknown investigator. UPS customer service assured Shortz that that situation would be resolved.

Shortly afterward, Shortz received another call from Stewart stating in essence that there was no authority above her and that in essence she did what she did with full authority of UPS and would continue to do so.

Shortz again called the UPS customer service 1-800 number and complained again about the unidentified investigator's return call and was advised at that time that the investigator's name was Penny Stewart.

In a recent USA Today article, foreign re-shippers were being investigated and prosecuted in a sting operation in Lagos, Nigeria. However a Russian expert advised of the volume of illegal shipments being arranged by Russians.

> Mikhail Penkovsky, commercial director for security software maker Agnitum, based in St. Petersburg, Russia, says the typical Russian ring is made up of a half-dozen operatives in their 20s or 30s. Based

3

> on reports from contacts who move in criminal circles, Penkovsky estimates there are 50 to 100 rings based in Moscow, each receiving about $20,000 worth of stolen goods a month.
>
> "That's almost $2 million a month from Moscow," he says. "We can imagine how much more is being done in St. Petersburg and other cities."

Citing that statistic, which obviously UPS would have known, why would UPS concentrate on making the volume of calls Penny Stewart made to Shortz concerning his Nigerian shipment? It is difficult to imagine that the world wide shipper UPS would make a call to every customer who contracts oversees shipments before shipping each shipment. However, UPS has that information on file and discovery will certainly verify the discriminatory or indiscriminate facts.

## FRAUD RULE 9(b)

*Rule 9(b) is satisfied if the complaint sets forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.* 256 F.3d at 1202 (quotations and citations omitted).

## FACTS according to RULE 9(b)

(1), (2) and (3) UPS Investigator Penny Stewart, in her official capacity, called Plaintiff James H. Shortz on his personal phone, (334) 467-7880, in reference to his contracted shipment to Nigeria on or about October 8, 2004, the day after Shortz purchased his shipment and delivered the merchandise to UPS. Penny Stewart assured

4

Shortz that his package would *only* be interrupted by United States Customs. Penny Stewart made no mention that Shortz' package would be interrupted and searched by UPS Security. Penny Stewart made no mention that Shortz' package would not go forward to its destination but would be lost, reportedly, and untraceable for many days. Neither did UPS customer service give any indication that Shortz' package would be diverted from it destination, opened and searched even lost, or concealed, for several days by UPS Security.

(4) UPS eventually found Shortz' package in Birmingham, Alabama, which was reportedly last seen in Louisville, Kentucky, when Shortz traced it through UPS delivery. That same day, on or about November 6, 2004, Shortz requested that the package be sent to Montgomery, Alabama. Shortz retrieved his package at the UPS Jackson Ferry HUB station on or about November 7, 2004. Shortz then contacted UPS's Corporate Complaint at (404) 828-3236 and advised them of Shortz' damages and losses. A letter from that office was mailed to Shortz advising that "YOUR CLAIM REQUIRES APPROVAL BY YOUR LOCAL SECURITY DEPARTMENT BEFORE PAYMENT CAN BE PROCESSED." On or about May 12, 2005 Shortz wrote to UPS requesting a settlement of the overdue claim. On or about July 21, 2005 Shortz filed this complaint in Federal District Court because no attempt had been made by UPS to off-set Shortz' losses. On or about August 8, 2005 Shortz received a certified letter from UPS containing a check for the amount of $384.64, the exact amount Shortz paid for the shipment of his package, which was never delivered. $384.64 is the exact amount Shortz paid to UPS nearly ten months before. There was no interest attached to the refund, not even 1%, to the amount refunded after UPS held

Shortz' money for nearly ten months. For nearly ten months UPS deprived Shortz of his money and profited by it with the interest it accrued.

## DAMAGES

Plaintiff James H. Shortz was deprived of his property and his reasonable expectation of privacy was maliciously violated by discriminatory acts, customarily practiced in Alabama's State Government and protected by the Alabama Unified Judicial System, that strained Shortz newly acquired Nigerian friendship. In repairing the damage done to the relationship by UPS's inconsiderate, malicious and possibly vindictive behavior, Shortz purchased round trip airfare through Air France to Port Harcourt, Nigeria and accommodations for nearly two weeks in order to repair the damage to his reputation. Enclosed is a copy of UPS belated refund check, minus interest, and the envelope with post mark, a copy of UPS Security's evaluation of Shortz and his Nigerian associates' character, and a copy of the check Shortz paid UPS for the services Shortz contracted with UPS but UPS never delivered.

James H. Shortz *Pro Se*
Post Office Box 3874
Montgomery, Alabama 36109
(334) 467-7880 (334) 271-3715

## CERTIFICATE OF SERVICE

THIS CERTIFIES THAT A COPY OF THE FOREGOING HAS BEEN DELIVERED TO THE FOLLOWING ADDRESS BY REGULAR MAIL THIS 30 DAY OF AUGUST 2005.

/S/ William R. Pringle, Esq.

Christian & Small LLP

505 North 20th Street, Suite 1800

Birmingham, Alabama 35203

Attorneys for defendant

United Parcel Service, Inc.

James H. Shortz *Pro Se*

Post Office Box 3874

Montgomery, Alabama 36109

(334) 467-7880 (334) 271-3715