IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

James H. Shortz,                                    )
                                                   )
Plaintiff,                                         )
                                                   )
                                                   )        CIVIL ACTION NO.3:05-cv-675-T
                                                   )
vs.                                                )        JURY DEMAND
                                                   )
                                                   )
United Parcel Service Inc.,                        )

Defendant,

## PLAINTIFF'S ANSWER TO MAGISTRATE JUDGE'S RECOMMENDATION

### I. INTRODUCTION

On the surface of Plaintiff's complaint, evidence of Constitutional violations is overwhelming.  In order for the Court to dismiss this case, the Court must conclude that United Parcel Service Inc., has the right to DISCRIMINATE against whomever the Constitution otherwise protects.    The Court has determined by the **RECOMMENDATION OF THE MAGISTRATE JUDGE** that United Parcel Service Inc., can grievously and maliciously violate the Constitution of the United States and protection of the 1st 4th and 14th Amendments whenever and against whomever United Parcel Service Inc., chooses.   Therefore, based on the appearance of Constitutional violations alone, **THE RECOMMENDATION OF THE MAGISTRATE JUDGE** must be wrong.

1

II. **FACTS**

**THE RECOMMENDATION OF THE MAGISTRATE JUDGE** misinterpreted Plaintiff's evidence when she determined that "For reasons unknown, the package did not reach its destination, but instead remained in Alabama."  Along with **PLAINTIFF'S ANSWER TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S MOTION TO AMEND COMPLAINT,** which he filed on August 30, 2005, Plaintiff included in an attachment a letter, which was printed and distributed by United Parcel Service Inc., which Plaintiff found inside his sealed package when he retrieved it from the United Parcel Service Inc., location in Montgomery, Alabama.  The attached copy of the letter written in large type whose author was identified as SDF Security stated,

> "Numerous contacts
> were made regarding
> this fraudulent
> Nigeria package.  We
> Did not get a response.
> It is being returned to
> your department for
> investigation.
>
> SDF Security"

It is clearly evident that the reason Plaintiff's package did not arrive at its destination is because of SDF Security and whatever department intercepted it to which SDF Security **RETURNED** it.  Also included in evidence is a copy of a hand-written label Plaintiff found affixed to his package,

> "Ricky Quincy
>
> Montgomery

Security"

It is clearly evident that the United Parcel Service Inc., department that handled Plaintiff's package was different from the normal package delivering function. There is therefore no doubt as to the oddly peculiar manner with which Plaintiff's package was handled by United Parcel Service Inc. There is also no doubt as to why Plaintiff's package did not arrive at its destination. Plaintiff is also reasonably certain that Penny Stewart initiated the misdirection of Plaintiff's package because of the two phone calls Stewart made to the Plaintiff wherein she divulged her suspicions. However, discovery will produce the details of Penny Stewart, Ricky Quincy and SDF Security involvement in Plaintiff's complaint.

### III. **FACTS CONTINUED**

**THE RECOMMENDATION BY THE MAGISTRATE JUDGE** only stated that, "Plaintiff was able to retrieve the package, and UPS later refunded the money Plaintiff paid for shipment." She did not state that the refund came only after Plaintiff's letter, dated May 12, 2005, to United Parcel Service Inc., in which Plaintiff announced his intent to sue. United Parcel Service Inc., sometime afterward sent Plaintiff a check dated July 1, 2005, which plaintiff received on or about August 8, 2005, ten months after Plaintiff contracted United Parcel Service Inc., to deliver his package to Nigeria. The check amount reflected the exact amount Plaintiff paid United Parcel Service Inc., to ship his package. United Parcel Service Inc., denied Plaintiff his right to profit from his own property for ten months and made no attempt to rectify that apparent error. The term

used by SDF Security was "fraudulent," and that most specifically describes United Parcel Service Inc., in its handling of Plaintiff's property.

## IV. **STANDARD**

Consistent with the allegations in Plaintiff's complaint are the following facts that identify specific damages for which Plaintiff seeks relief, such as the Magistrate Judge noted in her **RECOMMENDATION**.

1. Plaintiff was treated disrespectfully by Investigator Penny Stewart of United Parcel Service Inc. Investigator Penny Stewart initiated a process that stripped Plaintiff of his right to his personal property by determining that Plaintiff delivered "this fraudulent Nigeria package" for shipment. By attaching libelous slander to Plaintiff, Penny Stewart initiated a process that voided the contract Plaintiff made with United Parcel Service Inc., when Plaintiff originally shipped his property to Nigeria from his location at 801-28th Avenue in Phenix City, Alabama; Penny Stewart initiated another contract between Plaintiff and United Parcel Service Inc., when she assured Plaintiff that his property would not be intercepted by none other than United States Customs. Penny Stewart deliberately and maliciously, "fraudulently" misrepresented United Parcel Service Inc., with her willful intent to disrupt Plaintiff's shipment and divert it to destinations contrary to the contract Plaintiff entered into with United Parcel Service Inc. Recoverable damages to Plaintiff include, but are not limited to, Plaintiff's reputation because Plaintiff property was opened and directed at least three times to people within United Parcel Service Inc., communicating that

prompt, nor reasonably timely, refund of Plaintiff's shipping charges as per the written guarantee that United Parcel Service Inc., promised. Instead, United Parcel Service Inc., withheld Plaintiff's shipping charges for ten months denying plaintiff of at least the minimum amount of interest advertised by every financial institution. United Parcel Service Inc., according to Black's Law Dictionary, committed "*negligent tort*. A tort committed by failure to observe the standard of care required by law under the circumstances." United Parcel Service also committed "Theft of property in the second degree." According to the Alabama criminal Code: "A person commits the crime of theft of property if he: (1) Knowingly obtains or exerts unauthorized control over the property of another, with intent to deprive the owner of his property; or (2) Knowingly obtains by deception control over the property of another, with intent to deprive the owner of his property." "§ 13A-8-4. Theft of property in the second degree. (a) The theft of property which exceeds $250.00 in value but does not exceed $1,000.00 in value, and which is not taken from the person of another, constitutes theft of property in the second degree. (b) Theft of property in the second degree is a Class C felony." United Parcel Service Inc., withheld Plaintiffs $384.64 shipping charge for over ten months without authority to do so. If no more than %1 interest is ORDERED to be awarded, that fulfills the necessary "recoverable damage" that is required by law.

3. Plaintiff's newly acquired fragile relationship with his Nigerian associate was severely damaged by United Parcel Service Inc., when employees of that company decided to intercept Plaintiff's package. United Parcel Service Inc.,

6

caused Plaintiff to appear unreliable when United Parcel Service Inc., failed to expedite the shipment of Plaintiff's package as promised. In an effort to restore good relations, Plaintiff spent countless hours in conversations and in the end Plaintiff booked round-trip passage and accommodations to Nigeria. During that process Plaintiff spent all of his savings, approximately $5,000.00 in order to make a safe and successful trip. Plaintiff expects that United Parcel Service Inc., is responsible for at least half, approximately $2,500.00 because of the negligent behavior of the employees of United Parcel Service Inc. Black's Law Dictionary's definition for *gross negligence* applies to the acts United Parcel Service Inc., committed to facilitate Plaintiff's hardship. "*gross negligence*. 1. A lack of slight diligence or care. 2. A conscious, voluntary act or omission in reckless disregard of a legal duty and of the consequences to another party, who may typically recover exemplary damages." The Federal Court surely has suggested guidelines for compensation in this case; Plaintiff will rely upon whatever decision for recovery the Court may ORDER.

## V. <u>DISCUSSIONS</u>

"The state compulsion test is applicable where the state has 'exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice [made by the private entity] must in law be deemed to be that of the State. *Nobles v. Alabama Christian Academy,* 917 F. Supp. 786, 788-89 (M.D. Ala. 1996) (quoting *Rendell-Baker v. Kohn*, 457 U.S. 830, 840 (1982).'" That test was submitted in page #4 of the **<u>RECOMMENDATION OF THE MAGISTRATE JUDGE</u>** dated September 28,

Plaintiff's package was "fraudulent." During the process Plaintiff was viewed by as many as three different people as a "fraud" and a publication was made to that effect by employees of United Parcel Service Inc. According to Black's Law Dictionary, "*personal tort*. A tort involving or consisting in an injury to one's person, reputation, or feelings, as distinguished from an injury or damage to real or personal property." According to Alabama Criminal Code, "Criminal tampering in the second degree, a Class B misdemeanor, states "A person commits the crime of criminal tampering in the second degree if, having no right to do so or any reasonable ground to believe that he has such a right, he: (1) Intentionally tampers with property of another for the purpose of causing substantial inconvenience to that person or to another;" Not only did United Parcel Service Inc., tortuously cause personal damage to Plaintiff but United Parcel Service Inc., committed a criminal act also in the process. Surely there are guidelines within the Federal Court System that suggest what damages are commonly awarded for such tortuous behavior.

2. According to the contract into which Plaintiff entered with United Parcel Service Inc., "The carrier guarantees on-schedule delivery of UPS Worldwide Express Plus, Express [which Plaintiff contracted], Expedited, and Standard shipments to specific locations." Prior to making the contract with United Parcel Service Inc., of the shipment of his package, Plaintiff was told that Nigeria was included in the list of "specific locations." Plaintiff's package was never delivered, neither on-schedule nor otherwise. The guarantee United Parcel Service Inc., made to Plaintiff was "fraudulent." Neither did United Parcel Service Inc., make a

2005.  That test is essentially what Plaintiff identified as justification for his 42 U.S.C. §1983.

Plaintiff stated that **DISCRIMINATION** was the "custom" of the state of Alabama to which 42 U.S.C. § 1983 should be applied.  Alabama has consistently denied equal opportunities to Black citizens and it is understood that that is the "custom" of the State of Alabama.  In the State of Alabama, every Black person has been affected by **DISCRIMINATION** and every White person has been influenced by those who openly and legally promote **DISCRIMATORY** practices.

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory...subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

42 U.S.C. § 1983."  Quoted from **RECOMMENDATION OF THE MAGISTRATE JUDGE** dated September 28, 2005.

The "Heart of Dixie" is a State legislated symbol required to be affixed to every automobile tag issued by the State of Alabama.  Dixie symbolizes the culture wherein Black people are "customarily" servants to White people.  That symbol represents the "Custom" of Alabama.

"The Cradle of the Confederacy" is written in the symbol for the City of Montgomery, Alabama, Alabama's capitol city.  The Confederacy was organized and established as the

government, which would go to war representing the interests of the Slave holders in Alabama. The Capitol of the Confederacy originally operated out of Montgomery Alabama and the first home of its President Jefferson Davis is maintained there today.

The State of Alabama also officially observes Confederate Holiday(s).

The legislature in Alabama allocates millions of dollars of taxpayers' money to maintain shrines to Confederate leaders and Confederate heroes, men who fought to preserve the right to brutally kidnap, imprison, and merchandise Black people like livestock. Today more Confederate flag-type-replicas are displayed in more places by more people than during the Civil War when it was the banner under which Confederate soldiers rode in a effort to destroy the United States of America altogether and to create another nation.

Montgomery, Alabama is known world-wide for the famous Bus Boycott, which took over a year to produce any reasonably acceptable end to segregated commercial travel; even the Federal courts were sluggish to grant relief.

The State of Alabama has recently spent over thirty million dollars in legal fees in order to justify Alabama Department of Transportation's decades of **DISCRIMINATORY** employment practice(s), which continues to be a custom of Alabama State government. At every level of Alabama State government indicators of **DISCRIMINATION** are clearly evident to whoever has been exposed to Alabama State government. Like the custom of United States Slavery, here in Alabama, Black people continue to be driven to the bottom tier of economic advancements while White people give orders and control the society directing it into White rule and domination.

The economic opportunity which Plaintiff endeavored to cultivate with his Nigerian associate was interrupted in the same manner as most legitimate Black originated, organized and operated businesses are disrupted "customarily" in Alabama. Yet White people in Alabama mindlessly affirm that Black people have equal opportunities in Alabama. But evidenced by this James H. Shortz v. United Parcel Service Inc., there is no equal opportunity in Alabama unless the Federal Courts act responsibly under the jurisdiction of 42 U.S.C. § 1983.


James H. Shortz *Pro Se*

Post Office Box 3874

Montgomery, Alabama 36109

(334) 467-7880 (334) 271-3715


## CERTIFICATE OF SERVICE


THIS CERTIFIES THAT A COPY OF THE FOREGOING HAS BEEN DELIVERED TO THE FOLLOWING ADDRESS BY REGULAR MAIL THIS ___11___ DAY OF OCTOBER 2005.


/S/ William R. Pringle, Esq.

Christian & Small LLP

505 North 20th Street, Suite 1800

Birmingham, Alabama 35203

Attorneys for defendant

United Parcel Service, Inc.

James H. Shortt / *Pro Se*

Post Office Box 3874

Montgomery, Alabama 36109

(334) 467-7880 (334) 271-3715